Our third case for argument today is United States v. Shehadeh. I think it's quiet enough now. Mr. Jayne. Thank you, Your Honor. Good morning, Your Honors, and may it please the Court. My name is Parth Jayne, and I represent Defendant Appellant Jamal Shehadeh. This case is about two fundamental constitutional rights afforded to all criminal defendants. The right to fully confront one's accusers and the right to take the stand in one's own defense. The district court below abrogated both of these rights as to Mr. Shehadeh, first by excluding important impeachment evidence against Mr. Shehadeh's primary accuser. Why haven't you waived that argument? The motion was made by the government below. Counsel did not object to it at all, and the court gave counsel the opportunity to renew it, and it was never renewed. And we've been very clear in our law that a party who unsuccessfully opposes a motion has to accept the court's invitation to renew it or it's waived. So I want to be very careful here, Your Honor, because there's two different motions at issue in this case. We can talk about the one that was made by the government first and then the pro se motion. Absolutely, Your Honor. So my question was focused on the one that was made by the government that there was no objection to. In fact, it was beyond that. There was an agreement with it and then a failure to renew any type of argument after an explicit invitation by the court to do so. Yes, Your Honor. So as you noted, the court specifically said that should this credibility and impeachment evidence later become relevant during trial, then the issue could be re-raised, and I think that's exactly what occurred here, specifically. Re-raised before it goes to the jury, not re-raised in a post-trial motion or on appeal. You've got to re-raise it for the court to address it. So I think it was re-raised at trial, Your Honor, and it was re-raised specifically at trial because a couple of important things happened. First, Mr. Chief Wheeler was cross-examined, and he made a number of admissions as to the other evidence that was presented against Mr. Shahada. I'll give just two examples. He admitted that the confidential informant was high while the staged drug buy took place. He testified that the police officers did not search the residence beforehand to confirm that there wasn't already methamphetamine on the scene. And so because he made these concessions as to the other evidence, the credibility of the testifying witnesses— But did counsel ever say, Your Honor, I'd like to move to reconsider the government's motion in Limine? You invited me to do this. I would like to bring in this other information to cross-examine him. So it wasn't Mr. Shahada's counsel that did that. Rather, when Mr. Shahada took the stand in his own defense, he tried to get into the issue of Mr. Wheeler's— But that's different than cross-examining. You can't cross-examine the officer with the testimony of the defendant. That's a completely separate issue. The question is, I didn't see anything in the record, and I read the testimony, where counsel re-raised with the court, I would like to try to impeach him with this material that I previously said I didn't want to. And I think you'd have to agree that was never done. I would absolutely agree that was never done, Your Honor. I think the relevant error here isn't just whether counsel was able to cross-examine Chief Wheeler on that specific point. It's whether or not Mr. Shahada was able to testify in his own defense as to his own experiences with Chief Wheeler, the evidence that he had specifically uncovered during his investigations of Chief Wheeler's misconduct. But we were never able to arrive at that point because as soon as Mr. Shahada mentioned dishonesty, the government objected and the court sustained the objection without further discussion. And I think the other thing that I would point out, Your Honor, is even if this court doesn't agree that that preserved decision for appellate review, I think the most important piece of impeachment evidence in this case came from the affirmative motion that Mr. Shahada filed to try to introduce impeachment evidence against Chief Wheeler. But he was pro se at the time, and again, our law is clear that if you're represented by counsel, you don't have the right to file pro se motions or the court doesn't have to address those motions unless counsel adopts them. And the motion was filed. The court gave counsel the opportunity to adopt it if he wanted to, and he didn't. So I think that the procedure that the court employed is a little bit more muddy than that. Specifically, the court actually addressed Mr. Shahada's motion on the merits, and it specifically stated that it would construe Mr. Shahada's motion as a motion to eliminate, and then it actually tried to adjudicate the merits. And Mr. Shahada's counsel during that hearing never affirmatively waived that issue. What Mr. Shahada's counsel noted multiple times is that he had a very limited amount of time to review Mr. Shahada's pro se motion. It did not appear that he even had a chance to confer with Mr. Shahada as to the motion. And in that event, the district court could have taken the motion under advisement, read the relevant Maywood v. Wheeler opinion, and then issued an order, or it could have rescheduled the motion for argument. But instead, the district court tried to have it both ways. Counsel, does the record reflect how much information his counsel had about the residency requirement? It sounds like the counsel was incorrect as to the procedural history of that case. Yes, Your Honor. Trial counsel was incorrect as to the determination that was made in that case. And what trial counsel specifically said during that motion hearing was, I haven't had much of an opportunity to review this. The statements that I'm making might be incorrect. And if opposing counsel, specifically the government, notices anything, then please correct me if I'm wrong. And so Mr. Shahada's counsel never affirmatively stated that he's waiving this point or that he's not adopting the position. He was put on the spot to argue the merits of Mr. Shahada. But he said part of it did not go to Chief Wheeler's credibility. And that's what this was all about. That's saying it's not proper impeachment based on credibility. So, again, I think I want to be careful, Your Honor, because there were multiple pieces of evidence in Mr. Shahada's motion. And, again, I think trial counsel's statements were based on my very cursory review, and I have not had a full opportunity to review this. If I'm put on the spot, I would say my initial review reveals that there probably won't be credibility issues here. But, again, that's not an affirmative waiver. Trial counsel did not say, I've reviewed the record carefully, I've reviewed the motion carefully, I've read the case, and I've determined that there's no credibility issues here. And then after addressing everything, the court said, if things change at trial and you wish to seek to introduce something to impeach Chief Wheeler, I certainly will consider it at that time. And counsel never re-raised this issue with respect to Chief Wheeler. So I think this is where the Seventh Circuit, this court's opinions in cases like United States v. Kennedy are instructive. Because, again, what the district court did here was employ a very tortured procedural approach. First, the district court said it would construe it as a motion to eliminate, and then it said, actually, now that I've found on the merits, I'm going to strike it because it's just a pro se motion, and I don't even know if I'm allowed to procedurally adopt it. And that leaves trial counsel and Mr. Shahada with very little instruction as to what specific circumstances must arise in order for the motion to be reconsidered. It's not clear whether there must be some new piece of evidence that allows the motion to be reconsidered. And, again, I think the fact that Mr. Shahada tried to bring up Chief Wheeler's credibility and dishonesty at trial, but was never able to proceed beyond that point, is, again, in effect, another way that he tried to preserve this issue for appellate review. But this court was never able to get there. I'll reserve the rest of my time for rebuttal, if that's OK with Your Honors, and there are no more questions. Thank you. Mr. Simpson. Thank you, Your Honors. To begin with, I wanted to just start by stepping back and providing a little bit of context here. Mr. Shahada committed the offense involved in this case only six months into his supervised release for his prior federal conviction for manufacturing methamphetamine. So law enforcement certainly was not operating on a clean slate here. That also makes Mr. Shahada's assertion that he did not have a source for methamphetamine a little harder to believe. A few comments on the waiver claim, and, of course, we strongly believe that Mr. Shahada waived this evidentiary argument regarding the rebuttal evidence. Defense counsel said that the government's motion in Lumminy was well-founded. The defense did not oppose it. At the point where Mr. Shahada said he thought that Chief Wheeler was a liar, again, of course, as the panel has observed already, counsel did not ask to reopen the whole issue. And, of course, that testimony was objected to by the government, presumably because there was no evidence in the record at that point suggesting that questioning Chief Wheeler's honesty. And the most damning issue here, we believe, in relation to the pro se motion is that counsel never asked for more time. Defense counsel has said that defense counsel apparently at trial or before trial felt pressured for time. He never asked for more time. True, he did mischaracterize that Maywood decision, the decision regarding the Maywood residency requirement, but he never asked for more time. Apparently, he never looked at the decision again. He never followed up with the court and said, I was incorrect on what that decision said, and he never asked for more time to consider the issue. And he did not. He actually did not adopt that pro se motion as his own, even assuming Mr. Shahada did not waive that claim. It is without merit. The district court was well within its discretion in excluding the proffered evidence about Mr. Wheeler, about Chief Wheeler's character for truthfulness. Most importantly, all of that evidence, all of that evidence related to incidents that happened many years earlier. The controlled buy in this case occurred in March 2021. The trial was in October 2022. And looking back at the evidence that we're talking about, the proposed rebuttal evidence, the police discipline involving Chief Wheeler was from 2002 to 2009 compared to 2021. The misdemeanor DUI offense was from 2007. The investigation into Mr. Wheeler's compliance with the residency requirement covered 2006 to 2009. So what we're talking about here are things that occurred from 12 to 19 years before the offense. That's really grasping at straws for potentially impeaching information. And most of this information obviously had nothing to do with Chief Wheeler's truthfulness or non-truthfulness. There's also some in relation to that Maywood decision. The defense here has some additional problems in relation to in relation to waiver or procedural default, whatever you want to call it. Mr. Shahada's pro se motion only cited the Maywood decision along with another decision and said, just baldly said, they reflected untruthfulness. They reflected upon Chief Wheeler's truthfulness and didn't otherwise describe it. And of course, as we discussed, the defense counsel inaccurately described the outcome of that Maywood decision and counsel did not adopt the motion. So the defense didn't, aside from all the waiver issues that we've already talked about, the fact that it was a pro se motion, didn't adopt the motion. The defense didn't even properly bring that Maywood decision to the court's attention. And it was, of course, the defense's burden to do that. Then you have the harmless error problem as well. There was overwhelming evidence here of Mr. Shahada's guilt. You have all the messages he sent to the informant about selling him methamphetamine. You have the fact that he admitted the offense in the interview with law enforcement afterwards. You have the fact that he admitted the offense to his mother in the jail in the recorded jail call. Aside from Chief Wheeler's whatever issues he might have had, again, the only information we have on that was very old. Chief Wheeler's testimony was corroborated by several other government witnesses. Then you have the 403 problem. And the Maywood decision, of course, kind of goes back and forth as to whether Chief Wheeler demonstrated any untruthfulness there. The different courts disagreed on that. And because of that, if the court had allowed the defense to bring in this alleged rebuttal evidence, there would have been a huge 403 problem from the standpoint of basically having a mini-trial on whether Chief Wheeler was honest or dishonest in relation to that Maywood issue. We haven't talked yet about the obstruction enhancement. Your Honors, I'll say just a few words on that. I wanted to point out that Mr. Shihada's guideline range was 262 to 327 months in prison. And the court imposed a far below guidelines sentence of 92 months. He didn't just express innocence on the stand. He gave a convoluted story, a detailed story, trying to explain different elements of the government's evidence. For example, his testimony that he initially planned to take the government funds from the informant and not give any drugs in return, that was apparently meant to explain all these messages where he had promised to sell methamphetamine to the informant. Then his testimony that he changed his plan once he saw the— Just as a matter of interest, have you ever seen that kind of defense succeed? A defense that, I plan to commit a different crime. They should indict me for that instead. I'm not sure I've seen that succeed, Your Honor. It was—the court reporter said that— We actually do see that kind of defense on appeal now and again, but I've never seen it succeed. Correct, Your Honor. As the transcript said that the judge called it a fanatical defense, I really think the judge meant to say fantastical. That would have made a lot more sense, and it truly was fantastical. This judge had seen this defendant before. Taylorville is a small town. Any idea how large the police department is? Does the record say? No, Your Honor, I don't think it does say. I don't think it does say how many. Ultimately, Your Honors, the judge's findings supported that obstruction enhancement. Finally, there's also a harmless error issue here. Huge, huge harmless error problem. Mr. Shahada's status as a career offender was really what drove the guidelines range here. It increased his offense level far beyond the two levels that were added by this mere obstruction enhancement. The guidelines would have been the same even without the obstruction enhancement. I believe so, Your Honor, because of the career offender status, which the defendant here did not challenge that status. So, Your Honors, unless there are further questions, we ask the court to affirm. Thank you, counsel. Thank you. Anything further, Mr. Jane? Your Honor, I'd like to briefly just address the weight of the Maywood v. Wheeler opinion, because the government has tried to downplay it a number of times, but I think that I want to impress upon the court that it was a pretty aggressive repudiation of Chief Wheeler's actions. The court was not wishy-washy on him making untruthful statements. It said he made multiple untruthful statements over a long period of time. So I do think it's important to note that it was a very strong repudiation of his actions, and I think that's why it's still very probative, notwithstanding the passage of time. And I want to briefly note on the sentencing enhancement, the analysis is that the government is required to show that the sentencing decision would not have been different absent the enhancement. And I think in the post-Booker era, the government was required to show that the procedure the district court did employ in coming to a sentencing conclusion. Isn't that only if the guideline calculations are inaccurate, though? And here, the obstruction enhancement did not ultimately impact the guidelines because of the career offender enhancement. So I think that this is – I'll briefly respond, Your Honor, if that's okay. I think this is a particularly interesting case, because on the one hand, you have the career – Did it affect the guidelines range or not? It did not affect the – It did not. Okay. Thank you, Counsel. Thank you. Mr. Jane, we appreciate your willingness to accept the appointment in this case, which is taken under advisement.